Jesse F. Paddleford and Fuller P. King, Claimants,
     *v.* The State of New York.    No. 2400-A.

(State of New York, Court of Claims, May, 1918.)

Highway Law, § 2(5), 125(8), 130(9) — construction of — contracts —
    highways — bridges.

> Where, during the progress of the work done under a contract for the improvement of a county highway, a steel bridge thereon was found to be defective and in such condition that it probably was insufficient to carry the traffic after the improvement was made, and, after an arrangement had been made with the proper authorities for the construction of a concrete bridge having a span of fifty-six feet to replace the defective bridge, claimants were directed by the resident engineer to perform the work, no part of which was provided for in the original contract, there can be no recovery in the absence of a supplemental contract executed by the state highway commission, pursuant to section 130(9) of the Highway Law.

Section 2(5) of the Highway Law excluding from the definition of a ''highway'' all bridges having a greater span than five feet, the construction of the concrete bridge in question was beyond the power and authority of the state highway commission to order or to obligate the state therefor.

Section 125(8) of the Highway Law, which provides that the division engineer ''may provide for such other work as may be required to complete the construction or improvement in a proper manner,'' confers no authority on him to obligate the state without restraint or otherwise for the construction of bridges.

CLAIM for damages under a contract with the state through the state commissioner of highways for the improvement of county highway No. 705 in the county of Chenango.

H. C. & V. D. Stratton, for claimants.

Henry P. Nevins, Deputy Attorney-General, for State of New York.

CUNNINGHAM, J.   On the 11th day of June, 1912, the claimants made a contract with the state, through the state commission of highways, for the improvement of county highway No. 705 in the county of Chenango. The claimants began the construction of the road promptly. Later, a steel bridge on said highway was found to be defective and in such condition that probably it was insufficient to carry the traffic after the improvement of the highway. The state's division engineer directed the resident engineer to arrange with the town of Sherburne for the construction of a concrete bridge, to replace the steel bridge, and abutments, the town to build the top, or '' slab,'' and the state the remainder, that is, the abutments, pier and wing walls. This arrangement was made. The resident engineer, pursuant to instructions from the divi-

sion engineer, prepared the plans and specifications for the work, and the claimants were directed by the resident engineer to perform the work pursuant thereto, which they did. The bridge is of two spans and is fifty-six feet long and twenty-two feet wide, and the abutments are twenty-two feet long, eleven feet high, and an average of four and one-half feet thick. The pier in the center of the bridge is twenty-four feet long, eleven feet high and about four and one-half feet thick. The four walls are twelve and one-half feet long and an average of ten feet high and four feet thick. A supplemental agreement in writing, which included among other matters the items of the state's alleged share of the work, was prepared and executed by the claimants, by the division engineer, the county superintendent of highways, and the chairman of the county board of supervisors, but it never was executed by the state commissioner of highways. On the contrary, he refused to execute it, because these items of work were included. On April 9, 1914, he executed a supplemental agreement for all the items of work and materials included in the previous agreement submitted to him, except the items relating to the bridge. The claimants fully performed the contract for the construction of the highway, final estimate for the work was approved, and all sums due the claimants paid, but payment for the items of work involved in the construction of the bridge was refused. These items total the sum of $1,802.57.

The state contests the claim on two grounds.

*First.* That the items for which claim is made were not included within the original contract of June 11, 1912, and were not provided for by any supplemental agreement in writing, executed by the commission, and therefore constitute no claim against the state.

*Second.* That the said items were unauthorized by

law, because the bridge was of a span exceeding five feet.

This inquiry involves no doubt concerning the good faith of the claimants. It is not denied that the work was done properly, and that the amounts claimed are reasonable, and that the claimants have not been paid. Naturally, the facts tend to create some sympathy for the claimants, in their predicament, but the court has no other recourse than to determine the rights of the parties, in consonance with the law applicable thereto.

The Highway Law reads, "All contingencies arising during the prosecution of the work shall be provided for to the satisfaction of the commission and *as may be agreed upon in the original or by a supplemental contract executed by the commission.*" Laws of 1909, chap. 30, § 130, subd. 9. There is a suggestion in the brief of the claimants' counsel that this work was done under the original contract, because the latter contained provisions for the alteration of the plans and specifications, and for changes in quantities and because this work was of the same character as that covered by one of the unit prices in the original contract. There is no merit to this contention. These provisions in the original contract refer to work fairly within the purview of the latter, although, perhaps, differing in detail, measurements or quantity from that originally contemplated. The original contract, plans and specifications contained no provision for the construction of any bridge. No bridge was then contemplated by the parties. The claimants' proof shows, and their brief says, that this work was done pursuant to the arrangement made subsequently to the execution of the contract, to which we have referred, and for which plans and specifications were made long afterward.

.The provisions of the contract, which are quoted by

26

the claimants, are contained in the " information for bidders," proposal and specifications. The entire contract is not before us. Exhibit No. 3 has been referred to as the contract, but it is incomplete, consisting only of the information for bidders, proposal and specifications, but it does not include the contract itself. We are unable to determine whether there are any other provisions, modifying or defining those quoted by the claimants. Many of the forms of state highway contracts in use contemporaneously with the one at issue contain an express provision, as follows: " It is further agreed that any increase of quantities, or extra work performed, or materials furnished, shall be covered by a supplemental contract, as provided in chapter 30, Laws of 1909, and amendments thereto." We are not informed whether this contract contained any such provision. If it did, it would merely confirm the result at which we arrive. In the absence of proof, we have not assumed that it contained this clause.

It is patent, therefore, that the work for which claim is made was not provided for in the original contract. The statute requires that it shall have been provided for by a supplemental contract, executed by the commission, if recovery is to be had. The claimants are not able to produce such a supplemental contract, as authority for the performance of the work, and as a basis for their claim. Not only did the commission omit to execute a supplemental contract for this work, but the commissioner expressly refused to do so, and signed the supplemental contract tendered for his signature, only after the excision of these items therefrom.

The claimants rely on the last clause of subdivision 9 of section 130 of the Highway Law, which reads as follows: " Such supplemental contract shall not be binding unless it be approved by the commission in case of a state highway and in case of a county highway, by

the chairman of the board of supervisors and the district or county superintendent.'' They construe this to mean, substantially, that supplemental contracts, when necessary, require, in the case of a county highway, execution and approval by the chairman of the board of supervisors, and the district or county superintendent only. This is not the meaning of the statute. The 1st paragraph of section 130 of the Highway Law indicates the scope of all the subdivisions of the section. They apply to both state and county highways, and the excerpt from subdivision 9 of section 130, which we quoted first, *supra,* applies to both state and county highways. There is no distinction between them, in the requirement that all the work must be provided for in the original or by a supplemental contract executed *by the commission.* The last sentence of the subdivision, upon which the claimants rely, imposes an additional requirement, to wit: that a supplemental contract in the case of a *county highway* must also be approved by the chairman of the board of supervisors and the district or county superintendent.

The absence of a supplemental contract, executed by the state highway commission, as a basis for recovery, is fatal to the claim. *Stanton* v. *State, ante,* p. 221.

The second objection raised by the state is equally conclusive against the claimants. This bridge has a span of fifty-six feet. The statute says, ''A highway, within the provisions of this chapter shall be deemed to include necessary culverts, sluices, drains, ditches, waterways, embankments, retaining walls and all bridges having a span of *five feet or less.''* Laws of 1909, chap. 30, § 2, subd. 5. It is in accord with an elementary rule of construction, that the specific mention of all bridges having a span of five feet or less excludes from the definition of a '' highway,'' all bridges of greater span. The statute, therefore,

excludes the bridge involved here from the term "highway," wherever it is used in the statute. The claimants have failed to point to any provision of law authorizing the state commission of highways, or any of its officials, to obligate the state for the erection of bridges, as such, or for any work, except the construction of " highways." The entire chapter of the statute to which we have referred relates solely to " highways," as defined by it. The statute confers no authority for the construction of bridges. Not only is this so, in a general way, but the statute defines, specifically, the powers and authority of the commission, and they do not include the authority to construct bridges, or to obligate the state therefor. Laws of 1909, chap. 30, § 15.

But the claimants contend that they have discovered that such statutory authority is vested in the division engineer. They quote subdivision 8 of section 125, chapter 30, Laws of 1909, which reads as follows: " He may provide for such other work as may be required to complete the construction or improvement in a proper manner." This quotation is made out of its context. Section 125, and the subdivision thereof referred to, relates to " maps, plans, specifications and estimates." Such is the title. It treats of the powers of the division engineer, in connection with these details, and defines what he shall do in that connection, and in the preparation of the maps, plans, specifications and estimates, as the statute specifically says, " In respect to such highways." It is in this connection, and in this sense, that subdivision 8, upon which the claimants rely, must be read. It confers no authority on the division engineer to do anything except " in respect to such highways," and certainly no authority to obligate the state, without restraint, or otherwise, for the construction of bridges. It is irrelevant that

the highway commission, or its officials prior to this controversy, constructed bridges, and expended the state's money, in violation of the statute. This is not a case for construction of a doubtful or vague provision of statute. The statute is clear, and the limitations upon the power of the department concerned are unquestionable. The statute cannot be nullified by the conduct of officials who hold their only authority by virtue of its provisions. The claim must be dismissed.

ACKERSON, J., concurs.

Claim dismissed.